ANTHONY L. FRANÇOIS, No. 184100
E-mail: alf@pacificlegal.org
J. DAVID BREEMER, No. 215039
E-mail: jdb@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7444

*Attorneys for Plaintiff*
*Building Industry Association – Bay Area*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BUILDING INDUSTRY ASSOCIATION – BAY AREA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>Defendant. | No. 3:15−cv−03392−TEH<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**<br><br>**DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Building Industry Association – Bay Area (Association), brings this First Amended Complaint for declaratory and injunctive relief against the City of Oakland (City) to overturn the Oakland Public Arts Requirements for Private Developers Ordinance (Ordinance). This law requires citizens seeking building permits to transfer property interests (including public art, fees, and public access to private facilities) to the City and/or to comply with exactions demanded by the City as a condition of developing their property, and to engage in government-mandated speech, all in violation of the United States Constitution.

2. The Ordinance requires property developers to spend .5% or 1% of their project cost for on-site public art installations, provide public access to projects, and/or pay an in-lieu fee that the City will use to fund public art in public places.

3. These requirements compel developers to communicate or fund government-compelled art messages to obtain permits. Moreover, new development does not create the need for the art conditions.

4. The Ordinance therefore violates the United States Constitution. While the Fifth and Fourteenth Amendments allow the City to reasonably regulate development, they forbid local governments from imposing permit exactions that are unconnected and disproportionate to the direct impacts of development. The First Amendment forbids the government from forcing property owners to fund and convey government messages, including through art, as a condition of granting a permit. Since the Ordinance does all of this, it is unconstitutional, and the Association is entitled to equitable relief under 42 U.S.C. § 1983, and the Declaratory Judgment Act, including a preliminary and permanent injunction.

## THE PARTIES

5. Building Industry Association – Bay Area is a nonprofit corporation organized under the laws of the State of California and does business in Alameda County and the City of Oakland. The Association comprises hundreds of home builders, developers, property owners, contractors, subcontractors, building trades, suppliers, engineers, and design professionals involved in the business of providing housing throughout the Bay Area, including Alameda County

and the City of Oakland. The Association's mission includes advocacy in support of housing opportunities for prospective home buyers and renters, and legal representation of the interests of its members and the community. Its mission also includes the enforcement of the law governing housing and residential development.

6. Some members of the Association are subject to the Ordinance. Others have considered applying for development permits, or may want to do so in the future, but are now subject to unconstitutional conditions on the exercise of the right to apply for development permits. Because the Ordinance causes particularized harm to the Association and its members, both would benefit from judicial relief.

7. Defendant City of Oakland is a political subdivision of the State of California and the local governing authority in Oakland. The City enacted the Ordinance challenged by this lawsuit. The City is entitled to sue and be sued, and is constrained by the laws of the United States, including the United States Constitution, and 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

8. The claims in this action arise under the First and Fifth Amendments to the United States Constitution, as incorporated against the states by the Fourteenth Amendment. The Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. A remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201.

9. Venue is proper in this Court because this action concerns private property located in Oakland, California, and a legislative enactment of the City, all of which are within the jurisdiction of the Northern District of California.

10. The City is responsible for approving development permits for property located in Oakland, under provisions of California state law and subject to constraints imposed by the United States Constitution.

11. The City has historically carried out a public art program for its own capital improvement projects, under its Public Art Ordinance No. 11086 C.M.S., adopted in 1989. This

///

///

Public Art Ordinance does not apply to private construction, and does not require provision of publicly accessible art within private development.

12. In October, 2014, the City council proposed a new ordinance—the Oakland Public Arts Requirements Ordinance, Oakland Municipal Code § 15.70.010, *et seq*.—to require private developers to install publicly accessible art in new development projects or pay an in-lieu fee to fund public art on or within the City's capital improvement projects. The City adopted the law on December 9, 2014, and it went into effect on February 8, 2015. On or about July 23, 2015, Plaintiff filed this lawsuit challenging that ordinance. Following discovery and prior to filing dispositive motions, the Court stayed proceedings pursuant to a stipulation of the parties, pending the City's revision of the ordinance. On or about June 27, 2017, the City took final action to rescind the ordinance and replace it with a substantially similar ordinance, "Public Art Requirements for Private Developers," codified at Oakland Municipal Code Chapter 15.78, § 15.78.010, *et seq*. The revised ordinance (Ordinance) took immediate effect on the date of its adoption.

13. A copy of the Ordinance is attached hereto as Exhibit A and incorporated herein by reference.[1]

14. The Ordinance requires developers to install art works that are freely accessible to the public (worth at least .5% of the total cost for residential and 1% for commercial projects) on their property or the adjacent right-of-way as part of a development project. Section 15.78.070A.

15. Developers may meet up to 75% of the art requirements by dedicating a space in the project, for either a free-of-charge art gallery or for arts and cultural programming. Section 15.78.070B.2. Such an area must be open to the general public during business hours.

16. When installing art to satisfy the Ordinance, builders must choose from a limited number of artists "verified" by the City. Section 15.78.090. All art designs must be submitted to the City before they are installed. Section 15.78.100.

17. Builders may opt out of the public art requirement only if they pay an in-lieu fee to

[1] Subsequent section references are to the Oakland Municipal Code unless otherwise stated. The attached copy of the Ordinance is in the form provided by the City, and shows by underline and strikethrough how the Ordinance differs from its rescinded predecessor enactment.

the City, which fee will be used to fund the installation of publicly owned and accessible art on City property elsewhere in the City. Section 15.78.070B.1.

**DECLARATORY RELIEF ALLEGATIONS**

18. Under the Fifth and Fourteenth Amendments to the United States Constitution, the Association and its members have a right to just compensation for takings of their private property. They have a collateral right to be free from building permit conditions that exact private property interests, without just compensation, where there is no reasonable connection between the impacts of a proposed project and the exaction.

19. Under the First and Fourteenth Amendments to the United States Constitution, the Association and its members have a right not to speak. They have a right to refrain from conveying government speech. They have a collateral right to be free from permit conditions that coerce them to give up First Amendment rights to obtain a building permit.

20. On its face, the Ordinance exacts property from building applicants—including physical property, money, and the right to exclude strangers from private property—without just compensation and without any reasonable connection between these exactions and the impacts of development. There is accordingly a justiciable controversy in this case as to whether the Ordinance violates the Fifth and Fourteenth Amendments.

21. On its face, the Ordinance further requires building applicants to engage in expressive, noncommercial speech as a condition of putting private property to developmental use.

22. There is accordingly a justiciable controversy in this case as to whether the Ordinance violates the First and Fourteenth Amendments.

23. A declaratory judgment as to whether the Ordinance and the permit conditions it imposes violate the Fifth and First Amendments will clarify the legal relations between the Association and Defendant, with respect to enforcement of the Ordinance.

24. A declaratory judgment as to the constitutionality and legality of the Ordinance will give the parties relief from the uncertainty and insecurity giving rise to this controversy.

///

///

## INJUNCTIVE RELIEF ALLEGATIONS

25. The Association has no adequate remedy at law to address the violations of their Fifth and First Amendment rights arising from the Ordinance and occurring under color of state law.

26. There is a substantial likelihood that the Association will succeed on the merits of its claims that the Ordinance violates the Fifth and First Amendment by requiring property owners to surrender unrelated property without compensation, where there is no connection between development and such exactions, and to engage in noncommercial speech.

27. The Association and its members will suffer irreparable injury absent a permanent injunction restraining Defendant from enforcing the Ordinance.

28. The Association's injuries—subjection to uncompensated exactions of property which bear no relation to development, and forced speech—outweigh any harm the injunction might cause Defendant.

29. An injunction restraining Defendant from enforcing the unconstitutional Ordinance on its face will enhance, not impair, the public interest.

## LEGAL CLAIMS

## FIRST CLAIM

### Unconstitutional Exaction and Taking of Private Property – Facial Claim Under 42 U.S.C. § 1983

30. The Association hereby re-alleges each and every allegation contained in Paragraphs 1 through 29 as though fully set forth herein.

31. The Ordinance conditions the exercise of a state law and common law property right—a property owner's right to use and develop property—on the transfer of protected property interests, such as real and personal property, the right to control public access to property, and money, to the City.

32. Money is constitutionally protected property.

33. The right to exclude the public from private property, and to control the time, place, and manner of any permitted public access, is constitutionally protected property.

34. Real property and art works are constitutionally protected property.

35. If Defendant simply demanded that the Association's members hand over portions of their real property, money, art works, or grant public access, it would be liable for a per se unconstitutional physical taking of property.

36. Under *Nollan v. Cal. Coastal Comm'n* (*Nollan*), 483 U.S. 825 (1987), *Dolan v. City of Tigard* (*Dolan*), 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Mgmt. Dist.* (*Koontz*), 133 S. Ct. 2586 (2013), the government may constitutionally exact real property interests, money, and other property from property owners as a condition of development permission only if:

a. The exaction directly mitigates a public impact directly arising from the property owners' development of their property; and

b. The exaction is roughly proportionate in both nature and degree to the public impact arising from the property owners' development of their property.

37. The public art requirements of the Ordinance and art fees are not related to, and do not address, any impact arising from the property owners' exercise of their right to residential or commercial development of private property.

38. The exactions imposed by the Ordinance are not proportionate in either nature or degree to any impact arising from the property owners' exercise of their right to residential or commercial development of property.

39. In requiring property owners such as the Association's members to pay money, and/or dedicate art works and public access as a condition of exercising their state law property right to develop their property, the Ordinance imposes unconstitutional conditions and unconstitutionally exacts and takes private property.

40. The exactions imposed by the Ordinance violate the constitutional principles articulated in *Nollan*, *Dolan*, and *Koontz*.

41. The unconstitutional exactions arising from the Ordinance are imposed under color of state law and violate 42 U.S.C. § 1983.

42. This claim does not seek "just compensation," but only equitable relief sufficient to restrain the enforcement of the unconstitutional exactions arising from the Ordinance.

43. The Ordinance contains no waiver provision or administrative remedy that is applicable to this claim, and in any event, the Association need not exhaust administrative remedies prior to bringing this claim.

44. This facial unconstitutional conditions/takings claim is ripe for immediate resolution in federal court.

**SECOND CLAIM**

**Violation of First Amendment –**
**Coerced Noncommercial Speech and Unconstitutional Conditions Facial Claim Under 42 U.S.C. § 1983**

45. The Association hereby re-alleges each and every allegation contained in Paragraphs 1 through 44 as though fully set forth herein.

46. The Association and its members have a protected First Amendment right that includes the right to refrain from speaking at all. This right includes the right to be free from being coerced by government to convey a government-approved message or other speech. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Frudden v. Pilling*, 742 F.3d 1199, 1202-03 (9th Cir. 2014).

47. Artwork, including the artworks required and regulated by the Ordinance, are within the ambit of First Amendment protection. Artworks are noncommercial speech.

48. The Ordinance requires the Association's members to install artworks in their projects as a condition of developing their property, in violation of their right to refrain from engaging in expressive First Amendment activity.

49. The Ordinance requires the Association's members to install only those forms of public art approved by the City in violation of the right of the Association's members to refrain from conveying government mandated messages.

50. The in-lieu fees option, designed to coerce money from the Association's members to fund public art on City projects, violates the Association's members' right not to engage in speech.

51. The public art mandate and in-lieu fees option imposed by the Ordinance violate the unconstitutional conditions doctrine in the First Amendment context.

///

52. The First Amendment violations arising from the Ordinance are imposed under color of state law and violate 42 U.S.C. § 1983.

53. This claim seeks equitable relief sufficient to restrain the enforcement of the unconstitutional speech requirements arising from the Ordinance.

54. The Ordinance contains no waiver provision or administrative remedy that is applicable to this claim, and in any event, the Association need not exhaust administrative remedies prior to bringing this claim.

55. This facial First Amendment claim is ripe for immediate resolution in federal court.

**RELIEF SOUGHT**

WHEREFORE, the Association prays for judgment from this Court as follows:

1. A declaratory judgment that the Ordinance violates *Nollan*, *Dolan*, and *Koontz* and the Takings Unconstitutional Conditions Doctrine on its face, and is therefore invalid and unenforceable;

2. A declaratory judgment that the Ordinance violates the First Amendment and the Unconstitutional Conditions Doctrine on its face, and is therefore invalid and unenforceable;

3. A preliminary prohibitory injunction preventing Defendant from enforcing or taking further action to enforce the Ordinance on its face;

4. A permanent prohibitory injunction preventing Defendant from enforcing or taking further action to enforce the Ordinance on its face;

5. An award to the Association of reasonable attorneys' fees and expert fees for bringing and maintaining this action, including under 42 U.S.C. § 1988;

6. An award to the Association of costs of suit pursuant to Federal Rule of Civil Procedure 54(d); and

///

///

///

///

///

7. An award to the Association of any other and further relief that the Court deems just and proper under the circumstances of this case.

DATED: July 24, 2017.

Respectfully submitted,

ANTHONY L. FRANÇOIS, No. 184100
J. DAVID BREEMER, No. 215039

/s Anthony L. François
ANTHONY L. FRANÇOIS
Pacific Legal Foundation
930 G Street
Sacramento CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7444
Email: jdb@pacificlegal.org
Email: alf@pacificlegal.org

*Attorneys for Plaintiff*
*Building Industry Association – Bay Area*

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing **FIRST AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983; DECLARATORY AND INJUNCTIVE RELIEF** have been served through the Court's CM/ECF system on all registered counsel this 24th day of February, 2017.

Respectfully submitted,

/s/ Anthony L. Francois,
ANTHONY L. FRANCOIS

*Attorneys for Plaintiff*
*Building Industry Association – Bay Area*

# EXHIBIT A

REVISED BY CED COMMITTEE 6/13/17

APPROVED AS TO FORM AND LEGALITY

INTRODUCED BY COUNCILMEMBER ____________________

OFFICE OF THE CITY ATTORNEY

# OAKLAND CITY COUNCIL

## ORDINANCE NO. ________ C.M.S.

**ORDINANCE REPEALING ORDINANCE NO. 13275 C.M.S., AMENDING THE OAKLAND MUNICIPAL CODE TO ADOPT CHAPTER 15.78, PUBLIC ART REQUIREMENTS FOR PRIVATE DEVELOPMENT, AND ADOPTING CALIFORNIA ENVIRONMENTAL QUALITY ACT EXEMPTION FINDINGS**

**WHEREAS**, on February 28, 1989, the Oakland City Council adopted Ordinance No. 11086 C.M.S., the Percent for Public Art Ordinance, which authorized the allocation of 1.5% of City capital improvement project costs to commission and acquire public art; and

**WHEREAS**, on December 9, 2014, the Oakland City Council adopted Ordinance No. 13275 C.M.S. to adopt Oakland Municipal Code Chapter 15.70, Public Art Requirements, which established a new requirement of .5% for residential or 1% for nonresidential of private development project costs for public art and codified, in part, the existing requirement of 1.5% of the City's capital improvement project costs for public art; and

**WHEREAS**, Ordinance No. 13275 C.M.S. expressly provides that the public art requirement may be reevaluated whenever new requirements or fees are considered so that the totality and allocation of all development requirements and fees are deemed reasonable and appropriate; and

**WHEREAS**, new development generally results in aesthetic impacts to a community. As development and revitalization of real property within the City continues, the opportunity for creation of cultural and artistic resources is diminished. As these opportunities are diminished and urbanization occurs, the need to develop alternative sources for cultural and artistic outlets to improve the environment, image and character of the community is increased; and

**WHEREAS**, through the inclusion of public art or payment of an in lieu fee, developers of benefitting land uses will address at least a portion of the impact of their developments on aesthetics; and

**WHEREAS**, the City of Oakland's public art requirement for private development was adopted so that development of cultural and artistic assets are financed by those whose development diminishes the availability of the community's resources for those opportunities and contributes to community urbanization; and

**WHEREAS**, the Ordinance also provides the following benefits to the community: (a) maintain Oakland's art and culture for generations; (b) recognize the vital importance of the arts to the City as a whole; (c) enhance the economic sustainability of artists and arts organizations as a key to the vitality of the City of Oakland; and (d) make a lasting contribution to the intellectual, emotional and creative life of the community at large, and create a more desirable community to live, work, and recreate; and

**WHEREAS**, the public interest, convenience, health, safety and/or welfare require that public art be provided to address the legitimate public concern of mitigating the aesthetic impacts of development; and

**WHEREAS**, the legislative requirement to provide either public art or an in lieu fee generally applies to all private developers, and is a permissible land use regulation and a valid exercise of the City's traditional police power; and

**WHEREAS**, the Los Angeles County Economic Development Corporation's annual Otis Report on the Creative Economy, a state-wide study, consistently demonstrates that the arts have a significantly positive economic impact to overall tourism revenues in California and are one of the top five creative economy centers; and

**WHEREAS**, the Americans for the Arts, in their Arts & Economic Prosperity IV Report, document that the arts serve as economic drivers in the community, support jobs, and are the cornerstone of the tourism industry. Both the Otis Report and the Arts & Economic Prosperity IV Report also document the link between the arts and the overall economic health and vibrancy of the State; and

**WHEREAS**, cultural and artistic resources, which include visual artwork, the performing arts, and architectural resources, enhance the quality of life for individuals living in, working in, and visiting the City of Oakland, and enrich Oakland's visual environment and integrates the creative thinking of artists into the public realm and the streetscape; and

**WHEREAS**, balanced development of cultural and artistic resources preserves and improves the quality of the urban environment, increases real property values, and has a positive economic impact; and

**WHEREAS**, public art enhances the quality of life for Oakland's citizens, residents, visitors and businesses, and provides a means to enjoy and experience the City's cultural diversity; and

**WHEREAS**, the City seeks to repeal Ordinance No. 13275 C.M.S. and amend the Oakland Municipal Code to adopt Chapter 15.78 to recodify and clarify the requirements and process that apply to the public art requirement for private development; and

**WHEREAS**, this Ordinance does not codify the existing requirement that 1.5% of the City's capital improvement project costs be allocated to commission and acquire public art throughout the City, which was adopted by the City Council through Ordinance No. 11086 C.M.S. and continues to remain in effect; and

**WHEREAS**, this Ordinance serves the public interest and is necessary to protect and promote the health, safety, and/or welfare of the City of Oakland's constituents, and is enacted pursuant to Article XI, Sections 5 and 7, of the California Constitution, Section 106 of the Charter of the City of Oakland, the City's General Plan, specific plans and other land use plans; and

**WHEREAS**, Article XI, Section 5 of the California Constitution provides that the City, as a home rule charter city, has the power to make and enforce all ordinances and regulations in respect to municipal affairs, and Article XI, Section 7, empowers the City to enact measures that protect the health, safety, and/or welfare of its residents; and

**WHEREAS**, Section 106 of the Oakland City Charter provides that the City has the right and power to make and enforce all laws and regulations in respect to municipal affairs; and

**WHEREAS**, numerous policies enacted to support, protect and promote the health, safety and/or general welfare of Oakland's constituents are contained in the Land Use and Transportation Element of the City's General Plan and the Oakland Municipal Code, and include public art recommendations for the Broadway Valdez District Specific Plan, Central Estuary Area Plan, Coliseum Area Specific Plan, Lake Merritt Station Area Plan, West Oakland Specific Plan, and the pending Downtown Oakland Specific Plan; and

**WHEREAS**, the City has broad authority, under its general police power, to regulate the development and use of real property within its jurisdiction to promote the public welfare; and

**WHEREAS**, the public art requirement for private development serves the public interest and is necessary to protect the health, safety, and/or welfare of the citizens of Oakland; and

**WHEREAS**, this Ordinance is supported by sufficient justifications and/or evidence, including for reasons stated herein and in the record, including the May 18, 2017 City Council Agenda Report, incorporated herein by reference, and meets the appropriate legal standards, including without limitation the City's police power, constitutional standards, the terms of the Mitigation Fee Act, the Oakland City Charter, the Oakland Municipal and Planning Codes and the City's General Plan, specific plans and other land use plans/policies; and

**WHEREAS**, the proposed amendments to the Oakland Municipal Code were considered at a regular, duly noticed meeting of the Public Art Advisory Committee on January 9, 2017; and

**WHEREAS**, the proposed amendments to the Oakland Municipal Code were considered at a regular, duly noticed meeting of the City Planning Commission on January 18, 2017; and

**WHEREAS**, this Ordinance was considered, after a duly noticed public meeting of the Community and Economic Development Committee on June 13, 2017, and the Committee recommended adoption of this Ordinance; and

**WHEREAS**, this Ordinance was considered, after a duly noticed public meeting, at a regular meeting of the City Council on June 20, 2017, and all interested parties were provided an ample opportunity to participate in said meeting and express their views; and

**WHEREAS**, this action is exempt from the requirements of the California Environmental Quality Act (CEQA) pursuant to CEQA Guidelines sections 15060(c)(2) (no direct or reasonably foreseeable indirect physical change in the environment), 15061(b)(3) (no significant effect on the environment), and 15183 (projects consistent with a community plan, general plan, or zoning), each as a separate and independent basis, and when viewed collectively provide an overall basis for CEQA clearance; now, therefore

**THE COUNCIL OF THE CITY OF OAKLAND DOES ORDAIN AS FOLLOWS:**

**SECTION 1. Recitals.** The City Council finds and determines the foregoing recitals are true and correct and are an integral part of the City Council's decision, and are hereby adopted as findings.

**SECTION 2. Repeal of Ordinance No. 13275 C.M.S.** Ordinance No. 13275 C.M.S., adopted by the City Council on December 9, 2014, is hereby repealed.

**SECTION 3. Addition of Chapter 15.78 to the Oakland Municipal Code.** Title 15 of the Oakland Municipal Code is hereby amended to add a new Chapter 15.78 as follows. Existing provisions of the Oakland Municipal Code are being recodified from Chapter 15.70 to Chapter 15.78, and existing text is shown as unmodified or in ~~strikethrough~~, and new text shown in double underline.

## Chapter 15.780 – Public Art Requirements for Private Development

### Article I – Title

### Section 15.780.010 – Title

This Chapter shall be known as the "Public Art Requirements for Private Development" and is referred to herein as this Chapter.

### Article II – Administrative

### 15.780.020 – Purpose *[Moved from OMC Section 15.70.050]*

The purpose of this Chapter Article III is intended to promote the arts in the City of Oakland by requiring the inclusion of establish a public art requirement for work component in new development projects in Oakland. A policy is hereby established to require certain private developments in order to provide the following benefits to the community: (a) maintain Oakland's art and culture for generations; (b) recognize the vital importance of the arts to the City as a whole; (c) enhance the economic sustainability of artists and arts organizations as a key to the vitality of the City of Oakland; and (d) make a lasting contribution to the intellectual, emotional and creative life of the community at large, and create a more desirable community to live, work, and recreate. use a portion of building development funds for the acquisition and installation of publicly accessible works of art for placement on the development site as a condition of project approval. A policy is hereby established to require developers and/or owners of certain private developments to use a portion of building development costs for the acquisition and installation of freely accessible works of art for placement on the development site or on the right of way adjacent to the development site (within 1/4 mile) as a condition of project approval. Developers and/or owners are encouraged, but not required, to employ Oakland artists and/or arts organizations to fulfill the public art requirement.

### 15.78.030 – Definitions

As used in this Chapter, the following terms shall have the meanings set forth hereto or as otherwise specified in the guidelines referenced herein. Where terms are not defined, they shall have their ordinary accepted meanings within the context with which they are used.

"AFFORDABLE HOUSING" means housing that is restricted to occupancy at an affordable rent or an affordable housing cost to moderate-income households, low-income households, or very low-income households. The terms "affordable rent" and "affordable housing cost" shall be as defined in California Health & Safety Code sections 50053 and 50052.5 and their implementing regulationsis defined in Section 17.107.020 of the Oakland Planning Code.

"ARTIST" means an individual generally recognized by critics and peers as a professional practitioner of the visual, performing, or literary arts, as judged by the quality of that professional practitioner's body of work, educational background, experience, public performances, past public commissions, sale of works, exhibition record, publications, and production of art work.

"BUILDING DEVELOPMENT COSTS" means those construction costs as declared on building permit applications, and as accepted by the Building Official. Building permit applications shall include building, plumbing, mechanical and electrical permit applications for the project.

~~CAPITAL IMPROVEMENT COSTS include all construction costs as well as architectural and engineering fees and site work associated with capital improvement projects. Capital improvement costs do not include administrative costs or costs related to the investigation and remediation of hazardous materials.~~

~~CITY CAPITAL IMPROVEMENT PROJECT means any capital improvement project paid for wholly or in part by funds appropriated by the City of Oakland to construct or remodel a building, decorative or commemorative structure, park, street, sidewalk, parking facility, or utility or any portion thereof, within the City limits of, or under the jurisdiction of, the City of Oakland.~~

~~DEMOLITION COSTS means payment for any work needed for the removal of buildings or other existing structures from City property.~~

"DEVELOPER ~~and/or~~AND/OR OWNER" means any individual, firm, limited liability company, association, partnership, political subdivision, government agency, municipality (other than the City of Oakland), industry, public or private corporation, or any other entity that undertakes any construction within the City subject to the requirements in this Chapter~~Article III~~.

"ECONOMICALLY FEASIBLE" is defined in Section 17.107.020 of the Oakland Planning Code.

"FLOOR AREA" is defined in Section 17.09.040 of the Oakland Planning Code.

"FREELY ACCESSIBLE" means the artwork is accessible to the public for viewing, in its entirety and in a direct line of sight without hindrances or visual obstacles, during regular business hours consistent with the operation and use of the premises. Nothing in this definition or Chapter is intended to require access by any member of the public to any area not otherwise accessible to the public pursuant to the normal operation and use of the premises.

"MAINTENANCE" of artwork shall include, without limitation, preservation of the artwork and, where applicable, of the lighting and surrounding landscaping, in good condition to the satisfaction of the City; and protection of the artwork against physical defacement, mutilation or alteration.

"OAKLAND PLANNING CODE" means Title 17 of the Oakland Municipal Code.

~~PUBLIC ART is a process which results in the incorporation of original works of art by artists in publicly accessible spaces and which serves a socio-environmental function identifiable with people; is accessible to the mind and the eye; is integral to the site and responds to the concept of place making; is integrated with the work of other design professionals; is of high quality; serves the City by enhancing the quality of life for citizens and contributes to the City's prestige; is unique to its moment in time and place.~~

~~PUBLIC ART ADVISORY COMMITTEE means a professionally qualified citizen committee recommended by the Oakland arts commission and approved by City Council to oversee quality control of the public art program, its projects, and to recommend to the Cultural Arts Division (CAD) the sites, scope of project, artworks and artists for the public art projects funded through the Public Art Project Account.~~

~~PUBLIC ART PROGRAM IN-LIEU CONTRIBUTION means the percentage of building development costs required herein.~~

~~PUBLIC ART PROJECT ACCOUNT IN THE CULTURAL ARTS DIVISION BUDGET means a project account which is established by the City to receive monies from both in lieu contributions made by a developer and/or owner and appropriated from the capital improvement project budgets to the public art program.~~

"PUBLIC ART PROJECTS" are projects which involve artists working through the public art process that result in the creation of original works in freely~~publicly~~ accessible spaces that include but are not limited to paintings, mural decorations, inscriptions, stained glass, fiber work, statues, reliefs or other sculpture, monuments, fountains, arches, or other structures intended for ornament or commemoration, carvings, frescoes, mosaics, mobiles, photographs, drawings, collages, prints, and/or crafts both decorative and utilitarian in clay, fiber, wood, metal, glass, plastics and other materials. Public a~~A~~rt projects also include artists serving on design and development teams to identify opportunities to incorporate art in freely~~publicly~~ accessible space.

~~PUBLICLY ACCESSIBLE ART means art that is accessible to the general public.~~

~~REAL PROPERTY ACQUISITION COSTS means payments made for the purchase of parcels of land, existing buildings or structures, and costs incurred by the City for appraisals or negotiations in connection with such purchases.~~

~~SHALL/WILL means a determinative directive which includes the common meaning of the word *must*.~~

**15.78~~0~~.040~~30~~ – Conflict**

Wherever the provisions of this Chapter conflict with each other or with the provisions of other associated codes, regulations, or ordinances, the applicable requirements of this Chapter ~~more restrictive provision or standard~~ shall control.

**15.78~~0~~.05~~040~~ – Amendments**

Where any section, subsection, sentence, clause, phrase, or other part of this Chapter and the referenced law recited herein are amended subsequently, all provisions of the original recitation not so specifically amended shall remain in full force and effect and all amended provisions shall be considered as added thereto.

**~~Article III – Public Art Requirements for Private Development~~**

**~~15.70.050 Purpose~~**

~~This Article III is intended to promote the arts in the City of Oakland by requiring the inclusion of a public artwork component in new development projects in Oakland. A policy is hereby established to require certain private developments to use a portion of building development funds for the acquisition and installation of publicly accessible works of art for placement on the development site as a condition of project approval. Developers and/or owners are encouraged to employ Oakland artists or arts organizations to fulfill the public art requirement.~~

**15.78~~0~~.060 – Administrative Regulations**

The City Administrator is hereby authorized to adopt rules and regulations consistent with this Chapter as needed to implement this Chapter, subject to the review and approval of the Office of the City Attorney, and to develop all related forms and/or other materials and take other steps as needed to implement this Chapter, and make such interpretations of this Chapter as he or she may consider necessary to achieve the purposes of this Chapter.

**15.78.070 – Contribution Requirements**

A. Calculation

1. Nonresidential Building Developments. Private nonresidential building developments involving 2,000 square feet or more of new floor area and subject to design review approval pursuant to Chapter 17.136 of the Oakland Planning Code shall devote an amount not less than one percent (1%) of building development costs for acquisition and installation of freely ~~publicly~~ accessible art on the development site or the adjacent right-of-way (within 1/4 mile).

2. Residential Building Developments. Private residential building developments of twenty (20) or more new dwelling units and subject to design review approval pursuant to Chapter 17.136 of the Oakland Planning Code shall devote an amount not less than one-half of one percent (0.5%) of building development costs for acquisition and installation of freely ~~publicly~~ accessible art on the development site or the adjacent right-of-way (within 1/4 mile).

B. In-Lieu Contribution

The in-lieu contribution can be satisfied in the following two ways:

1. ~~Compliance~~ At the discretion of the developer and/or owner, and in lieu of installing ~~on-site~~ public art, an ~~Public Art Program~~ in-lieu contribution shall be placed into the Public Art Project Account, as defined in Ordinance No. 11086 C.M.S., for acquisition and placement of public art throughout the City.

2. ~~Alternative Compliance Alternatively,~~The developer and/or owner may by special application and approval by the City satisfy up to seventy-five percent (75%) of the ~~Public Art Program~~ in-lieu contribution required hereunder as follows, if approved by the Public Art Advisory Committee, as defined in Ordinance No. 11086 C.M.S. ~~Any~~The remaining in-lieu contribution shall be placed into the Public Art Project Account.

a. Developer and/or owner's inclusion of space within the development project that is generally open to the public during regular business hours and is dedicated by developer and/or owner for regular use as a rotating art gallery, free of charge, will be deemed to satisfy twenty-five percent (25%) of the ~~Public Art Program~~ in-lieu contribution; and/or

b. Developer and/or owner's provision, design and commitment ~~dedication~~ of at least five hundred (500) square feet of space within the development project, to be made available to the public for the primary use of arts and cultural programming, may be deemed to satisfy fifty percent (50%) of the ~~Public Art Program~~ in-lieu contribution.

C. ~~Subsequent Removal of Public Art or Alternative Compliance Space. If the developer and/or owner satisfies the public art requirement in accordance with subsection (A)(1), (A)(2), or (B)(2), above, the public art previously installed on the development site or the inclusion and/or dedication of space within the development project may subsequently be removed if the developer and/or owner makes a Public Art Program in-lieu contribution equivalent to the original amount to the Public Art Project Account.~~

~~D.~~ Exclusions. The requirements of this Chapter~~Article III~~ shall not apply to an affordable housing development if the developer and/or owner demonstrates to the satisfaction of the City that said requirements would cause the development project not to be economically feasible.

**15.78.080 – Appeal Procedure**

A. Within ten (10) calendar days after the date of a decision by the Planning Director or City Planning Commission that includes a condition of approval imposing a public art requirement for private development, an appeal from said decision must be filed by the applicant or any other interested party. The appeal shall be submitted to the Bureau of Planning at 250 Frank H. Ogawa Plaza, 2nd Floor, Oakland, CA 94612. In the event the last date of appeal falls on a weekend or holiday when City offices are closed, the next date such offices are open for business shall be the last date of appeal. Such appeal shall be made on a form prescribed by the Bureau of Planning and shall be filed with the Planning and Building Department ("Department") and submitted to the Department to the attention of the Planning Director, along with the appropriate fees required by the City's Master Fee Schedule. The appeal application must be complete and shall state specifically wherein it is claimed there was an error or abuse of discretion by the Planning Director or City Planning Commission or wherein the Planning Director or City Planning Commission's decision is not supported by the evidence in the record. The appeal itself must raise each and every issue that is contested, including any and all constitutional claims, along with all the arguments and evidence in the record, which supports the basis of the appeal; failure to do so will preclude the appellant from raising such issues during the appeal and/or in court.

B. If a hearing is held on the appeal, then during such hearing, the appellant will be limited to issues and/or evidence previously raised in the appeal itself. The appellant shall not be permitted to present any other issues and/or oral, written and/or documentary evidence during the appeal process.

C. In considering the appeal, the City Administrator shall determine whether the public art requirement for private development conforms to the requirements of this Chapter and/or asserted constitutional provisions, and may grant or deny the appeal or impose such reasonable conditions of approval as are in his or her judgment necessary to ensure conformity to said criteria. The written decision of the City Administrator shall be final and shall be made within sixty (60) days of the submission of the appeal.

**15.780.09070 – Artist RequirementVerification**

Public art installed on the development site shall be designed by independent artists, or artists working in conjunction with arts and/or community organizations, that are verified by the City to either hold a valid Oakland business license or be an Oakland-based 501(c)(3) tax designated organization in good standing. Developers and/or owners are encouraged, but not required, to employ Oakland artists and/or arts organizations to fulfill the public art requirement. For the purposes of this Section, "artists" shall not include members of the architectural, engineering, design, or landscaping firms retained for the design and construction of a development project. Developers and/or owners installing art created by an artist not verified by the City shall pay a verification fee to the City in accordance with the Master Fee Schedule.

## ~~15.70.80 Public Art Project Account~~

~~Any in-lieu contributions placed in the Public Art Project Account shall be used to implement the Public Art Program, as described in Article V, below. Such funds may be used to acquire, place, and maintain public art on public property throughout the City, and to administer the Public Art Program.~~

## 15.78~~0~~.100~~090~~ – Compliance, Ownership and Maintenance

A. Compliance with the provisions of this Chapter~~Article III~~ shall be demonstrated by the developer and/or owner at the time of filing the Building Permit application by either~~as follows~~: (a) payment of the full amount of the ~~Public Art Program~~ in-lieu fee~~contribution~~, or (b) written proof to the Building Department and the Public Art Program of the Public Art for Private Development Checklist complete submittal package including budget and artist contract(s) for projects on the development site or on the right of way adjacent to the development site (within 1/4 mile), or (c) a complete and approved cultural space plan~~a contractual agreement to commission or purchase and to install the requested artwork on the development site~~.

B. The developer and/or owner shall ~~provide the City with proof of~~ installation ~~of the requested~~ any required artwork or cultural space ~~on the development site or proof of full payment of the Public Art Program in-lieu contribution~~ before issuance of the certificate of occupancy, unless the City has approved some other method of assuring compliance with the provisions of this requirement~~article. In the case of installation of public art on the development site, the developer and/or owner shall~~, and maintain said artwork or cultural space in proper condition on an ongoing basis, in accordance with the maintenance guidelines referenced below.

C. All artwork or cultural space shall become the property of the developer and/or owner and successor(s) in interest. Artwork and cultural space cannot be sold or transferred other than to a subsequent successor in interest. The obligation to provide maintenance and security, as necessary to preserve the artwork or cultural space in good condition, shall remain with the developer and/or owner. The developer and/or owner and successor(s) in interest may obtain adequate insurance coverage to cover the costs of the repair of any damage or necessary replacements to the public art or cultural space. In cases where public art is acquired and installed on the development site or on the right of way adjacent to the development site (within 1/4 mile), or the developer and/or owner elects to provide cultural space on the development site, all of the following must occur prior to issuance of a certificate of occupancy for any project subject to this Chapter:

1. A copy of the maintenance plan that includes information on materials, parts and fabricator contact information has been submitted to the City. Funds for maintenance are not part of the public art contribution requirement; and

2. A covenant setting forth the developer and/or owner's obligations under this Chapter has been executed and recorded with the Alameda County Recorder, and a conformed copy has submitted to the City. The covenant shall include a financial plan for the maintenance of the artwork or cultural space, a schedule of future condition checks, and preventative maintenance and restoration to conserve the artwork or cultural space at an appropriate level; and

3. A plaque has been installed adjacent to the artwork measuring no less than 8" x 8" or a proportionate size.

D. The City reserves the right to inspect the artwork or cultural space at any time to ensure it is being maintained as required by any covenant entered into pursuant to the provisions of Subsection 15.78.100(C).

E. Unless an artwork poses imminent danger to life or property, no person may destroy, permanently remove, relocate, change, alter, modify, or allow to be defaced, any artwork or portion thereof without the express consent of the City. This requirement will be included in the covenant to be recorded against the property.

F. ***[MOVED FROM SECTION 15.70.060(C)]*** If the developer and/or owner satisfies the public art requirement ~~in accordance with subsection (A)(1), (A)(2), or (B)(2), above, the public~~ by installing artwork ~~previously installed~~ on the development site or on the right of way adjacent to the ~~inclusion and/or dedication of space within the~~ development site (within 1/4 mile), and such artwork is ~~project may~~ subsequently ~~be~~ removed or destroyed, ~~if~~ the developer and/or owner must either 1) pay an ~~makes a Public Art Program~~ in-lieu fee~~contribution equivalent to the original amount~~ to the City's Public Art Project Account in an amount equivalent to the original value of the removed artwork, or 2) install replacement art that fulfills the requirements of this Chapter. The decision on which option is chosen is made by the City, not the applicant.

G. ***[MOVED FROM SECTION 15.70.060(C)]*** If the developer and/or owner satisfies the public art requirement by including ~~in accordance with subsection (A)(1), (A)(2), or (B)(2), above, the public art previously installed on the development site or the inclusion and/or dedication of~~ cultural space ~~within~~ on the development site and such cultural space is ~~project may~~ subsequently ~~be~~ removed or destroyed or ceases to be regularly available to the public, ~~if~~ the developer and/or owner ~~makes a Public Art Program~~ must pay an in-lieu ~~contribution~~ fee ~~equivalent to the original amount~~ to the Public Art Project Account in an amount equivalent to the original value of the space.

**15.78~~0~~.11~~0~~0 Violations ~~of this Article~~**

In addition to other fines or penalties provided by State or municipal law, the City may revoke or suspend any permit granted to any developer and/or owner who violates the provisions of this Chapter~~Article III~~.

**Article IV – Public Art Requirements for City Capital Improvement Projects**

**15.70.110 Purpose**

The City of Oakland accepts responsibility for expanding the opportunities for its citizens to experience public art and other projects resulting from the creative expression of its artists in public places throughout the City. A policy is hereby established to direct the inclusion of works of art in public spaces throughout the City and/or the design services of artists in certain City capital improvement projects.

Ordinance No. 11086 C.M.S. and the Public Art Policies and Procedures, adopted by the City Council on February 28, 1989, as such documents may be amended from time to time, continue to remain in effect.

**15.70.120 Funding**

**A. Appropriations**

All appropriations for City capital improvement projects, including all bond projects and all other capital projects funded from other sources excluding sewer repairs funded from sewer service charge fees shall include an amount equal to one-and-one-half percent (1.5%) of the total capital improvement project cost to be dedicated to the Public Art Project Account. Funds appropriated will be used for design services of artists, for the selection, acquisition, purchase, commissioning, installation, examination and/or display of original artworks, for the maintenance of artworks, for educating the public about the artwork and the Cultural Arts Division administrative costs to manage the program.

The 1.5% appropriation shall include but not be limited to General Fund funded capital improvements, gas tax funded capital improvements, Measure B funded capital improvements, off street parking funded capital improvements and any and all other capital improvements funded from other revenues including grants which may be so appropriated.

**B. Method of Calculation**

The minimum amount to be appropriated to the Public Art Project Account to fund artists' services and/or artworks, maintenance, administration, and education shall be the total capital project appropriation including all construction costs as well as architectural and engineering fees and site work expenses multiplied by 0.015, excluding amounts budgeted for real property acquisition; demolition; and financing costs.

**C. Pooling**

Funds appropriated as part of any one project, but not deemed necessary or appropriate in total or in part for public art at said project site by the Cultural Arts Division in consultation with the Public Art Advisory Committee and the capital

~~improvement project manager, may be expended on other projects approved under the Public Art Project Plan when such funds are eligible to be so used.~~

**~~D. Exclusions~~**

~~If the source of funding or other applicable law or regulation with respect to any particular capital improvement project or portion thereof prohibits or restricts the use of the 1.5% dedication of such funds for public art, this Article IV shall not apply to the project's expenses, so prohibited or restricted.~~

**~~E. Grant Applications~~**

~~All City departments shall include in applications for capital improvement projects to outside granting authorities amounts for artists' services and/or artworks as specified herein, where permitted or unless otherwise waived by the City Council. Receipt of such funds shall be administered as part of the City's Public Art Program.~~

**~~F. Waiver~~**

~~The City Administrator may request that the City Council exclude certain capital improvement projects from the provisions of this Article IV by the passage of a resolution authorizing such a waiver.~~

**~~Article V – Use of Public Art Project Account~~**

**~~15.70.130 Use of Funds~~**

~~It is intended that funds in the Public Art Project Account will be appropriated in the annual budget to obtain and install art in public places, to maintain and refurbish art in public places when the cost of such maintenance exceeds funds currently available for the maintenance of public property in general, to fund staff time in the Cultural Arts Division necessary to administer the public art program, and to defray such other expenses which are, or may become, an integral part of the public art program, including programs to educate the public about the public art.~~

**~~A. Eligible Costs~~**

~~Monies appropriated under Article IV, above, and any in-lieu contributions made in accordance with Article III, above, may be used for hiring artists to develop design concepts and for the selection, acquisition, purchase, commissioning, placement, installation, exhibition, and/or display of artworks. Artworks may be permanent or temporary and integral to the architecture. Integration of the artists' design concepts and/or the artworks into the project architecture should be insured insofar as feasible, by concurrent selection of the artist(s) with the architect or designer. All of the above are considered eligible expenses for the Public Art Program artist fees. Artist fees for such projects can include the following:~~

- ~~Structures which enable the display of artwork(s).~~

- ~~Artistic design and fabrication fees.~~

- ~~Labor of assistants, materials and contracted services required for the production and installation of the work of art.~~

- ~~Any required permit or certificate fees, business and legal costs directly related to the project.~~

- ~~Dealer's fees, if necessary and where appropriate CAD, in concurrence with the National Endowment for the Arts (N.E.A.) and several other arts agencies around the country, recommends that no more than 10% of the artist's fees be paid as a dealer/gallery commission.~~

- ~~Communication and other indirect costs (insurance, utilities).~~

- ~~Transportation of the work of art to the site.~~

- ~~Preparation of site to receive artwork.~~

- ~~Installation of the completed work of art.~~

- ~~Administrative fees can include the following:~~

  - ~~Cultural Arts Division's administration costs incurred in the process of administering the Public Art Program including staff time, direct costs and administrative overhead.~~

  - ~~Documentation (color slides and black and white photographs) of the artwork's fabrication and installation and plaques to identify the artwork.~~

**~~B. Ineligible Costs~~**

~~Monies appropriated under Article IV, above, and any in-lieu contributions made in accordance with Article III, above, may not be used for the following:~~

- ~~Directional elements such as supergraphics, signage, or color coding except where these elements are integral parts of the original work of art or executed by artists in unique or limited editions.~~

- ~~"Art objects" which are mass produced of standard design such as playground equipment or fountains.~~

- ~~Reproduction, by mechanical or other means, or original works of art, except in cases of film, video, photography, printmaking or other media arts.~~

- ~~Decorative or functional elements which are designed by the building architect as opposed to an artist commissioned for this purpose.~~

- ~~Landscape architecture and landscape gardening except where these elements are designed by the artist and are an integral part of the work of art by the artist.~~

**SECTION 4. California Environmental Quality Act.** The City Council independently finds and determines that this action is exempt from CEQA pursuant to CEQA Guidelines sections 15060(c)(2) (no direct or reasonably foreseeable indirect physical change in the environment), 15061(b)(3) (no significant effect on the environment), and 15183 (projects consistent with a community plan, general plan, or zoning), each of which provides a separate and independent basis for CEQA clearance and when viewed collectively provide an overall basis for CEQA clearance.

**SECTION 5. Authority.** This Ordinance is enacted to serve the public interest and is necessary to protect the health, safety, and/or welfare of the citizens of Oakland, and is enacted pursuant to Article XI, Sections 5 and 7, of the California Constitution, Section 106 of the Charter of the City of Oakland, and the City's General Plan, specific plans, and other land use plans.

**SECTION 6. Severability.** The provisions of this Ordinance are severable, and if any article, section, subsection, sentence, clause, phrase, paragraph, provisions, or part of this Ordinance, or the application of this Ordinance to any person, is for any reason held to be invalid, preempted by state or federal law, or unconstitutional by decision of any court of competent jurisdiction, such decision shall not affect the validity of remaining portions of the Ordinance which shall remain in full force and effect.

**SECTION 7. Ordinance Effective Date.** Pursuant to Section 216 of the Charter of the City of Oakland, this Ordinance shall become effective immediately on final adoption if it receives six (6) or more affirmative votes on final adoption; otherwise, it shall become effective upon the seventh day after final adoption. This Ordinance shall not apply to (a) building/construction related permits already issued and not yet expired, or (b) zoning applications approved by the City and not yet expired, or (c) zoning applications deemed complete by the City as of the date of final passage. However, zoning applications deemed complete by the City prior to the date of final passage of this Ordinance may be processed under provisions of these Oakland Municipal Code amendments if the applicant chooses to do so.

**SECTION 8. Conforming Changes.** The City Council hereby authorizes the City Administrator or designee to make non-substantive, technical conforming changes (essentially correction of typographical and clerical errors) prior to formal publication of the amendments in the Oakland Municipal Code.

**SECTION 9. Conflict.** Nothing in this Ordinance shall be interpreted or applied so as to create any requirement, power, or duty in conflict with any federal or state law.

**SECTION 10. Notice of Exemption.** The Environmental Review Officer, or designee, is directed to cause to be filed a Notice of Exemption with the appropriate agencies.

**IN COUNCIL, OAKLAND, CALIFORNIA,**

PASSED BY THE FOLLOWING VOTE:

AYES - BROOKS, CAMPBELL-WASHINGTON, GALLO, GIBSON MCELHANEY, GUILLEN, KALB, KAPLAN AND PRESIDENT REID

NOES -

ABSENT -

ABSTENTION -

ATTEST: ______________________________

LATONDA SIMMONS

City Clerk and Clerk of the Council
of the City of Oakland, California

Date of Attestation: ______________________________

## NOTICE AND DIGEST

**ORDINANCE REPEALING ORDINANCE NO. 13275 C.M.S., AMENDING THE OAKLAND MUNICIPAL CODE TO ADOPT CHAPTER 15.78, PUBLIC ART REQUIREMENTS FOR PRIVATE DEVELOPMENT, AND ADOPTING CALIFORNIA ENVIRONMENTAL QUALITY ACT EXEMPTION FINDINGS**

This ordinance repeals Ordinance No. 13275 C.M.S., which established a public art requirement for private development, and amends the Oakland Municipal Code to adopt Chapter 15.78, Public Art Requirements for Private Development. The ordinance recodifies existing developer public art requirements in OMC Chapter 15.78 and makes several minor clarifying changes to the public art requirement for private development, including adding an appeal procedure, refining various definitions, clarifying that in lieu contributions are due at the time of building permit application, and requiring signage and specific maintenance obligations.