1  Barbara J. Parker (SBN 69722)
   City Attorney
2  Otis McGee, Jr. (SBN 71885)
   Chief Assistant City Attorney
3  Colin Troy Bowen (SBN 152489)
   Supervising Deputy Trial Attorney
4  Michelle M. Meyers (SBN 236387)
   Senior Deputy City Attorney
5  OAKLAND CITY ATTORNEY
   One Frank H. Ogawa Plaza, 6th Floor
6  Oakland, CA 94612
   Tel: 510.238.3601     Fax: 510.238-6500
7
   Thomas B. Brown (SBN 104254)
8  E-mail:  tbrown@bwslaw.com
   Kevin D. Siegel (SBN 194787)
9  E-mail:  ksiegel@bwslaw.com
   Amy E. Hoyt (SBN 149789)
10 E-mail:  ahoyt@bwslaw.com
   Nicholas J. Muscolino (SBN 273900)
11 E-mail:  nmuscolino@bwslaw.com
   BURKE, WILLIAMS & SORENSEN, LLP
12 1901 Harrison Street, Suite 900
   Oakland, CA  94612-3501
13 Tel:  510.273.8780     Fax:  510.839.9104
14 Attorneys for Defendant
   CITY OF OAKLAND
15
                   UNITED STATES DISTRICT COURT
16                NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
17
18 BUILDING INDUSTRY ASSOCIATION          Case No. 3:15-cv-03392-VC
   --BAY AREA,
19                                         **DEFENDANT CITY OF OAKLAND'S**
                         Plaintiff,        **NOTICE OF RULE 12(b)(1) AND 12(b)(6)**
20                                         **MOTION TO DISMISS SECOND**
              v.                           **AMENDED COMPLAINT;**
21                                         **MEMORANDUM OF POINTS AND**
   CITY OF OAKLAND,                        **AUTHORITIES IN SUPPORT OF RULE**
22                                         **12(b)(1) AND (b)(6) MOTION TO**
                         Defendant.        **DISMISS**
23
                                           [Filed concurrently with Request for Judicial
24                                         Notice.]

25                                         Date:      January 4, 2018
                                           Time:      10:00 a.m.
26                                         Ctrm:      No. 4, 17th Floor
                                           Judge:     Hon. Vince Chhabria
27
28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4829-0104-9687 v2                     - 1 -          RULE 12(B)(1) AND (B)(6) MOTION TO
                                                         DISMISS SAC #3:15-CV-03392-VC

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that on **January 4, 2018 at 10:00 a.m.** before the Honorable

3  Vince Chhabria in Courtroom No. 4, 17th Floor of the United States District Courthouse, Federal

4  Building, 450 Golden Gate Avenue, San Francisco, California 94102, Respondents City of

5  Oakland (City or Oakland) will, and hereby do, move the Court for an order dismissing Plaintiff

6  Building Industry Association – Bay Area's (BIA) Second Amended Complaint (SAC) (Dkt. 60)

7  pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

8       This Motion is made on the grounds that the SAC is not justiciable because the BIA lacks

9  standing; and that the SAC does not allege facts sufficient to state a claim for violation of the

10  Takings Clause of the Fifth Amendment (first claim for relief) or a violation of the Free Speech

11  Clause of the First Amendment (second claim for relief).  Fed. R. Civ. P. 12(b)(1) and (b)(6)

12       This Motion is based on this Notice, the accompanying Memorandum of Points and

13  Authorities, the Request for Judicial Notice in Support of Defendant City of Oakland's Notice of

14  Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Second Amended Complaint filed and served

15  herewith, the papers and pleadings filed herein and such further matters as the Court may

16  consider at or before the hearing on this Motion.

17  Dated: November 29, 2017                    BURKE, WILLIAMS & SORENSEN, LLP

18

19                                             By: _/s/_ Kevin D. Siegel

20                                                  Thomas B. Brown
                                                   Kevin D. Siegel
21                                                  Amy E. Hoyt
                                                   Attorneys for Defendant City of Oakland

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4829-0104-9687 v2                - 2 -        RULE 12(B)(1) AND (B)(6) MOTION TO
                                                   DISMISS SAC #3:15-CV-03392-VC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 3

III.  STANDARD OF REVIEW ........................................................................... 4

IV.  STANDING .................................................................................................. 4

V.  ARGUMENT ................................................................................................ 6

A. The BIA Does Not and Cannot Allege Facts Stating a Facial Takings Claim............... 6

1.  The Ordinance Regulates Design and Aesthetics and Does Not Take Private Property Without Just Compensation ................................... 6

2.  The BIA Does Not and Cannot Allege a Facial Taking Under Nollan/Dolan/ Koontz .......................................................................... 7

a.  Nollan/Dolan/Koontz Does Not Apply to Generally Applicable Legislative Actions Like the Ordinance ...................... 7

b.  Equitable Relief for an Illegal Taking is Not Available Here......... 8

c.  Nollan/Dolan/Koontz Requires a Fact-Specific Inquiry to Determine if Government's Action Constitutes an Illegal Exaction............................................................................... 9

3.  The SAC Does Not Allege Facts Stating a Penn Central Takings Claim........................................................................................ 10

a.  No Federal Claim Exists Because the City Has Not Made a Final Decision on Any Development Application, and No Property Owner Has Sought Just Compensation in State Court.................................................................................... 10

b.  Penn Central Requires a Factual Inquiry to See if the Regulation Has Gone Too Far....................................................... 11

B.  The BIA Does Not And Cannot Allege Facts Sufficient to State a Facial First Amendment Claim.................................................................................. 12

1.  The First Amendment Claim Fails Because the Ordinance Does Not Implicate "Expressive Conduct." ................................................ 12

2.  The Ordinance Does Not Compel Speech ............................................... 13

VI.  CONCLUSION............................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Brown v. Legal Found. of Washington,*
  538 U.S. 216 (2003) ..........................................................................................8

5

6

*Carrico v. City and County of San Francisco,*
  656 F.3d 1002 (9th Cir. 2011) ..........................................................................5

7

8

*Committee for Responsible Regulation of Lake Tahoe v. Tahoe Regional Planning
    Agency,*
  311 F.Supp.2d 972 (D. Nev. 2004) ...........................................................12, 13

9

10

*Concrete Pipe and Products of California v. Construction Laborers Pension Trust
    For Southern California,*
  508 U.S. 602 (1993) ........................................................................................11

11

12

*Daniel v. Cty. of Santa Barbara,*
  288 F.3d 375 (9th Cir. 2002) ............................................................................8

13

14

*Demarest v. City of Leavenworth,*
  876 F.Supp.2d 1186 (E.D. Wash. 2012) .........................................................13

15

*Dolan v. City of Tigard,*
  512 U.S. 374 (1994) ......................................................................................2, 9

16

17

*Environmental Defense Center v. U.S. E.P.A.,*
  344 F.3d 832 (9th Cir. 2003) ..........................................................................14

18

19

*Frudden v. Pilling,*
  742 F.3d 1199 (9th Cir. 2014) ........................................................................13

20

*Garneau v. City of Seattle,*
  147 F.3d 802 (9th Cir. 1998) ............................................................................9

21

22

*Hadacheck v. Sebastian,*
  239 U.S. 394 (1915) ........................................................................................11

23

24

*Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale,*
  922 F.2d 756 (11th Cir. 1991) ........................................................................15

25

*Hart v. Massanari,*
  266 F.3d 1155 (9th Cir. 2001) ..........................................................................8

26

27

*Hightower v. City and County of San Francisco,*
  77 F.Supp.3d 867 (N.D. Cal. 2014) ................................................................14

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4829-0104-9687 v2                    - ii -                    RULE 12(B)(1) AND (B)(6) MOTION TO
                                                                    DISMISS SAC #3:15-CV-03392-VC

*Hoeck v. City of Portland*,
    57 F.3d 781 (9th Cir. 1995)..........................................................................7, 11

*Kamaole Pointe Dev. LP v. County. of Maui*,
    573 F.Supp.2d 1354 (D. Haw. 2008) ........................................................8

*Keystone Bituminous Coal Ass. v. De Benedictis*
    (1987) 480 U.S. 470 (1987) ...................................................................10

*Koontz Coalition v. City of Seattle*,
    2014 WL 5384434 (W.D. Wa. 2014) ............................................9, 14, 15

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    133 S.Ct. 2586 (2013) ..........................................................................2, 9

*Levin v. City & Cty. of San Francisco*,
    71 F.Supp.3d 1072 (N.D. Cal. 2014) .......................................................8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-561 (1992) .................................................................4

*MacDonald, Sommer & Frates v. Yolo Cty.*,
    477 U.S. 340 (1986)...............................................................................10

*McClung v. City of Sumner*,
    548 F.3d 1219 (9th Cir. 2008)..................................................................7

*Members of City Council of Los Angeles v. Taxpayers for Vincent*,
    466 US 789 (1984) ................................................................................11

*Monsanto Co. v. Geerston Seed Farms*,
    561 U.S. 139 (2010) ................................................................................5

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825 (1987) .............................................................................2, 9

*Outdoor Media Group, Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007)....................................................................4

*Penn Central Transp. Co. v. New York City*,
    438 U.S. 104 (1978) .........................................................................2, 8, 11

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988)...................................................................................10

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir.2003).....................................................................4

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006)......................................................................12, 13, 14

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4829-0104-9687 v2         - iii -         RULE 12(B)(1) AND (B)(6) MOTION TO
DISMISS SAC #3:15-CV-03392-VC

*United States v. Salerno*,
   481 US 739 (1987) .................................................................................................6

*San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*,
   545 U.S. 323, 337 n.18, 347 (2005) ....................................................................6

*San Remo Hotel v. City and County of San Francisco*,
   145 F.3d 1095 (9th Cir. 1998) ............................................................................10

*Sinclair Oil Corp. v. Cty. of Santa Barbara*,
   96 F.3d 401 (9th Cir. 1996) ................................................................................10

*Spence v. Washington*,
   418 U.S. 405 (1974) ............................................................................................13

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
   216 F.3d 764 (9th Cir. 2000) ................................................................................7

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
   535 US 302 (2002) ..............................................................................................11

*Telesaurus VPC, LLC v. Power*,
   623 F.3d 998 (9th Cir. 2010) ................................................................................4

*Thomas v. Anchorage Equal Rights Com'n*,
   220 F.3d 1134 (9th Cir. 2000) ............................................................................15

*Village of Euclid v. Ambler Realty Co.*
   272 U.S. 365 (1926) ............................................................................................11

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..........................................................................................4, 5

*Washington Legal Found. v. Legal Found. of Washington*,
   271 F.3d 835 (9th Cir. 2001) ................................................................................8

*Williamson County Regional Planning Commission v. Hamilton*,
   473 US 172 (1985) ..............................................................................................10

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ............................................................................................13

**State Cases**

*Bohannan v. City of San Diego*,
   30 Cal.App.3d 416 (1973) ....................................................................................7

*Breneric Assoc. v. City of Del Mar*,
   69 Cal.App.4th 166 (1998) ...................................................................................7

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4829-0104-9687 v2                - iv -                RULE 12(B)(1) AND (B)(6) MOTION TO
                                                            DISMISS SAC #3:15-CV-03392-VC

*California Bldg. Indus. Assn. v. City of San Jose,*
   61 Cal.4th 435 (2015) ..................................................................................8

*Desmond v. County of Contra Costa,*
   21 Cal.App.4th 330 (1993)..........................................................................7

*Ehrlich v. City of Culver City,*
   12 Cal.4th 854 (1996) ...................................................................1, 6, 7, 14

*Guinnane v. San Francisco City Planning Com.,*
   209 Cal.App.3d 732 (1989)..........................................................................7

*Home Builders Association of Northern California v. City of Napa,*
   90 Cal.App.4th 188 (2001)...........................................................................9

*Kucera v. Lizza,*
   59 Cal.App.4th 1141 (1998).........................................................................7

*Novi v. City of Pacifica,*
   169 Cal.App.3d 678 (1985)..........................................................................7

*Ross v. City of Rolling Hills Estates,*
   192 Cal.App.3d 370 (1987)..........................................................................7

*San Mateo County Coastal Landowners Assn. v. County of San Mateo,*
   38 Cal.App.4th 523 (1995)........................................................................10

*San Remo Hotel L.P. v. City and County of San Francisco,*
   27 Cal.4th 643 (2002) ............................................................................6, 8

**Other Authorities**

California Land Use Practice, § 18.68 ...............................................................7

Oakland Municipal Code
   § 15.78.030.................................................................................................12
   § 15.78.070(A) .............................................................................................3
   § 15.78.070(B) .............................................................................................3
   § 15.780.100(C) .........................................................................................12

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4829-0104-9687 v2    - v -    RULE 12(B)(1) AND (B)(6) MOTION TO
DISMISS SAC #3:15-CV-03392-VC

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.      INTRODUCTION**

3           Cities may use their police power to enact legislation that regulates land use, protects

4    aesthetics, and implements design review standards.  The City of Oakland's Ordinance

5    No. 13443, entitled Public Art Requirements for Private Development (Ordinance) does just that.

6    Exh. A to City's Request for Judicial Notice (RJN).  Based on the City Council's express finding

7    that incorporating publicly-accessible art into development projects promotes the public welfare,

8    the Ordinance requires specified new developments to devote 0.5 to 1.0% of project building

9    costs to (1) install publicly-accessible art on site or in the adjacent right-of-way, or (2) make an

10   in-lieu payment for the City to provide public art.

11          The Ordinance follows the City of Culver City's public art ordinance, which the

12   California Supreme Court[1] upheld over 20 years ago against a takings challenge in *Ehrlich v. City*

13   *of Culver City*.  In *Ehrlich,* the California Supreme Court held that:

14               [T]he **requirement to provide either art or a cash equivalent**
                 thereof is more **akin to traditional land use regulations** imposing

15               minimal building setbacks, parking and lighting conditions,
                 landscaping requirements, and other design conditions such as color

16               schemes, building materials and architectural amenities.  **Such**
                 **aesthetic conditions have long been held to be valid exercises of**

17               **the city's traditional police power, and do not amount to a**
                 **taking** merely because they might incidentally restrict a use,

18               diminish the value, or impose a cost in connection with the
                 property.  [Emphasis added.]

19
20   *Ehrlich v. City of Culver City*, 12 Cal.4th 854, 886 (1996), cert. den. 117 S.Ct. 299 (*Ehrlich*).  In

21   reliance on *Ehrlich*, the City, along with many other California cities, adopted public art

22   ordinances.  *See* City's RJN at Exhibits B to L for 11 other cities' public art ordinances.

23          The BIA, however, asks this Court to unsettle the law upon which California cities have

24   relied for decades.  The Second Amended Complaint (SAC) alleges that the Ordinance on its face

25   violates the Fifth Amendment's Takings Clause and the First Amendment's Free Speech Clause.

26   But the SAC fails as a matter of law because the BIA lacks standing and because the SAC does

27   ─────────────────────
     [1] As discussed at page 6, footnote 5, because the Takings Clauses of the United States and

28   California Constitutions are co-extensive for purposes of this action, this Court may and should
     rely on California Supreme Court decisions.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Mountain View

OAK #4829-0104-9687 v2                         - 1 -                  RULE 12(B)(1) AND (B)(6) MOTION TO
                                                                     DISMISS SAC #3:15-CV-03392-VC

1    not and cannot allege facts sufficient to state either a takings or First Amendment claim.

2          With respect to standing, this Court dismissed the BIA's First Amended Complaint

3    because it did not allege a concrete injury.  Dkt. 58.  Even with the amended allegations, the SAC

4    still fails to allege facts showing an injury in fact to either the BIA or its members.

5          The SAC also fails to allege any viable claim for relief.  The SAC's First Claim for Relief

6    does not, and cannot, allege facts sufficient to state a facial takings claim for three reasons.  First,

7    the Ordinance does not take private property—it regulates design and aesthetics for the public

8    welfare, which is well within the City's police power under both federal authorities and the

9    California Supreme Court's decision in *Ehrlich*.

10          Second, the SAC has not and cannot state a takings claim under the *Nolan/Dollan/Koontz*[2]

11   "exactions" theory because:  (1) the *Nollan/Dollan/Koontz* theory does not apply to legislative

12   acts such as adoption of the Ordinance; (2) equitable relief is not available to remedy an alleged

13   unconstitutional taking; and (3) the *Nollan/Dollan/Koontz* approach requires an ad hoc factual

14   inquiry to determine whether a monetary fee fails the nexus and rough proportionality

15   requirements and is an illegal exaction.  That inquiry is not possible on this facial challenge

16   because until the Ordinance is applied to a project and the Ordinance's appeal process is utilized,

17   it is impossible to determine whether an illegal exaction has occurred.

18          Third, the SAC has not and cannot state a takings claim under the *Penn Central*[3]

19   regulatory takings theory.  Like the exactions analysis, *Penn Central* requires a case-by-case

20   examination of the facts to determine whether a regulation has gone too far and become a taking

21   of property without just compensation.  Again, the inquiry is impossible in this facial challenge.

22          The SAC's Second Claim for Relief likewise fails to allege facts sufficient to state a facial

23   First Amendment claim.  The Ordinance's plain language demonstrates that it neither regulates

24   expressive conduct, nor compels any speech.  The SAC is thus fatally defective and these defects

25
26   [2] *"Nollan/Dolan/Koontz"* is shorthand for a trio of Supreme Court cases holding that a there must
     be a nexus between an exaction and a land use project's impacts, and that the amount of the
27   exaction must be roughly proportionate to impacts.  *See  Nollan v. California Coastal Comm'n*,
     483 U.S. 825 (1987) (*Nollan*); *Dolan v. City of Tigard*, 512 U.S. 374 (1994) (*Dolan*); and *Koontz
     v. St. Johns River Water Mgmt. Dist.*, 133 S.Ct. 2586 (2013) (*Koontz*).
28   [3]  *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978) (*Penn Central*).

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Mountain View

OAK #4829-0104-9687 v2                      - 2 -                RULE 12(B)(1) AND (B)(6) MOTION TO
                                                                DISMISS SAC #3:15-CV-03392-VC

1   cannot be cured.  The City asks the Court to dismiss the SAC without leave to amend.

2   **II.    STATEMENT OF FACTS**

3          On June 27, 2017, the City adopted the Ordinance.  RJN, Exh. A.  In the Ordinance's

4   recitals, the City Council made extensive findings outlining the need for, and purpose of, the

5   Ordinance.  Among other things, City found:

6       • "public Art enhances the quality of life for Oakland's citizens, residents, visitors
          and businesses …."

7       • "the legislative requirement to provide either art or an in lieu [that] generally
          applies to all developers … is a permissible land use regulation and a valid

8         exercise of the City's traditional police powers."

9       • "the City has broad authority, under its general police power, to regulate the
          development and use of real property … to promote the public welfare."

10      • "through the inclusion of public art or payment of an in lieu fee, developers of
          benefitting land uses will address at least a portion of the impact of their

11        developments on aesthetics."

12   RJN, Exh. A, pp. 2-3.

13         The Ordinance requires certain private developments that are subject to the City's design

14   review process "to use a portion of building development costs for the acquisition and installation

15   of freely accessible works of art for placement on the development site or on the right of way

16   adjacent to the development site … as a condition of project approval."  RJN, Exh. A,

17   § 15.780.020.  Specifically, nonresidential developments involving 2,000 or more square feet of

18   new floor area must devote 1% of building development costs to publicly-accessible art; and

19   residential projects involving 20 or more dwellings must devote 0.5% of building development

20   costs to publicly-accessible art.  RJN, Exh. A, § 15.78.070(A).  Developers may opt to pay an in-

21   lieu fee instead.  RJN, Exh. A, § 15.78.070(B).  The Ordinance also includes an appeal procedure

22   for the applicant to administratively challenge the contribution requirement.  RJN, Exh. A,

23   § 15.78.080.

24         In reliance on *Ehrlich* and other municipalities' public art laws, and to facilitate the

25   Ordinance's purpose, the Ordinance defines the phrase "freely accessible" to mean that "the

26   artwork is accessible to the public for viewing, in its entirety and in a direct line of sight without

27   hindrances or visual obstacles, during regular business hours consistent with the operation and

28   use of the premises.  Nothing in this definition or Chapter is intended to require access by any

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Mountain View

OAK #4829-0104-9687 v2                    - 3 -              RULE 12(B)(1) AND (B)(6) MOTION TO
                                                            DISMISS SAC #3:15-CV-03392-VC

1   member of the public to any area not otherwise accessible to the public pursuant to the normal

2   operation and use of the premises."[4]  RJN, Exh. A, § 15.78.030.

3   **III.   STANDARD OF REVIEW**

4           When ruling on a motion to dismiss, the Court generally considers only those allegations

5   contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

6   judicial notice.  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir.

7   2007); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  The Court need not accept

8   conclusory allegations.  It should "begin 'by identifying pleadings that, because they are no more

9   than conclusions, are not entitled to the assumption of truth.'"  *Telesaurus VPC, LLC v. Power,*

10  623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).  The Court should disregard "[t]hreadbare

11  recitals of the elements of a cause of action, supported by mere conclusory statements…."  *Id.*

12  (citations omitted).  After eliminating legal conclusions, the court must identify "well-pleaded

13  factual allegations," which it assumes to be true, "and then determine whether they plausibly give

14  rise to an entitlement to relief."  *Id.* (citations omitted).

15  **IV.   STANDING**

16          At the pleading stage, the party invoking federal jurisdiction has the burden to allege facts

17  sufficient to meet the elements of standing, including the existence of an "injury in fact*."  Lujan*

18  *v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (*Lujan*); *Warth v. Seldin*, 422 U.S. 490,

19  511 (1975) (*Warth*).  An injury in fact is an injury that is "concrete and particularized" and

20  "actual or imminent."  *Lujan,* 504 U.S. at 560 (citations omitted).  Injuries that are "hypothetical

21  or conjectural" are not sufficient to meet the standing requirement.  *Id.* (citations omitted).

22  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its

23  purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—

24

25  ---

    [4] "Freely Accessible" is defined in the Culver City public art ordinance to mean "the artwork is

26  accessible to the public for viewing, in its entirety and in a direct line of sight without hindrances
    or obstacles, for a period of ten (10) hours per day, seven (7) days per week.  See RJN, Exh. B at

27  § 15.06.110.  The City of Berkeley utilizes the phrase "On-Site Publicly Accessible Art" which is
    defined as "a location that is accessible to and available for use by the general public during

28  normal hours of business operation consistent with the operation and use of the premises."  See
    RJN, Exh. J at § 23C.23.040.E.

1   that the injury is certainly impending." *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139

2   (2010) (emphasis original).

3          *Warth v. Seldin* is instructive.  There, a builders' association challenged a zoning

4   ordinances and argued that its members had suffered an actual injury because the challenged law

5   deprived its members of development opportunities.  *Warth*, 422 U.S. at 514-515.  Holding that

6   association had not alleged a concrete injury, the Court observed that there were no allegations

7   that any members had actually sought and been denied land use entitlements, nor any allegations

8   any members had utilized the ordinance's remedial measures.  *Id.* at 516.  There were no

9   allegations of an "injury to [the association's] members of sufficient immediacy and ripeness to

10  warrant judicial intervention."  *Id.*

11         *Carrico v. City and County of San Francisco*, 656 F.3d 1002 (9th Cir. 2011) (*Carrico*) is

12  also relevant.  There, the Court found an association failed to allege a concrete injury sufficient to

13  bring a First Amendment challenge to an ordinance that prohibited landlords from threatening and

14  coercing tenants.  Explaining that "context matters," the Ninth Circuit observed that without

15  factual allegations explaining what actions the association's members intended to take to violate

16  the law, it was impossible to determine whether the actions were protected by the First

17  Amendment, whether the actions fell within the parameters of the challenged law, or whether the

18  members would be prosecuted.  *Id.* at 1007.

19         As in *Warth* and *Carrico,* the SAC's allegations are insufficient to show an injury in fact.

20  Although the SAC includes new allegations that some of its members' projects have been subject

21  to the Ordinance and that other members' projects will be required to comply, these allegations

22  are vague and conclusory. Indeed, until the Ordinance is applied and its appeal process exhausted,

23  the Court would be forced to speculate as to whether the City would interpret the Ordinance in

24  such a way as to implicate free speech or the prohibition on taking property without just

25  compensation.  The SAC lacks the fact allegations necessary to conclude that an injury either has

26  occurred or is imminent.

27  **V.    ARGUMENT**

28         A plaintiff asserting a facial challenge to legislation bears a steep uphill battle because it

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Mountain View

OAK #4829-0104-9687 v2                          - 5 -              RULE 12(B)(1) AND (B)(6) MOTION TO
                                                                   DISMISS SAC #3:15-CV-03392-VC

1   must allege facts that, if true, are  sufficient to "establish that no set of circumstances exists under

2   which the ordinance" is valid.  *United  States v. Salerno*, 481 US 739, 745 (1987).  Allegations

3   that an ordinance "might operate unconstitutionally under some conceivable . . . circumstances is

4   insufficient to render it wholly invalid …."  *Id*.  The SAC does not meet the standard.

5       A.      **The BIA Does Not and Cannot Allege Facts Stating a Facial Takings Claim.**

6       The SAC fails to allege acts sufficient to state a facial takings challenge to the Ordinance.

7   This is a defect that cannot be cured because the Ordinance regulates design and aesthetics and

8   does not take private property without just compensation.  Further, although the courts have

9   identified various theories for stating takings claims, including the *Nollan/Dolan/ Koontz* theory

10  for unconstitutional exactions and *Penn Central* theory for regulatory takings that the SAC

11  attempts to allege, the SAC fails to state any viable takings claim, whether under

12  *Nollan/Dolan/Koontz* or *Penn Central.*

13      1.      **The Ordinance Regulates Design and Aesthetics and Does Not Take Private
                Property Without Just Compensation.**

14

15      More than 20 years ago, the California Supreme Court[5] held in *Ehrlich* that generally-

16  applicable laws requiring developers to include "public art" in development projects are a valid

    exercise of municipal police power to regulate land use, and not a taking of private property.

17  *Ehrlich,* 12 Cal.4th at 886.  Rejecting a challenge to a law requiring developers to incorporate

18  public art to development projects or to pay an in-lieu fee, the Court held that such legislation "is

19  more akin to traditional land-use regulations" that impose design conditions through municipal

20  police power, and "do not amount to a taking merely because they might incidentally restrict a

21  use, diminish the value, or impose a cost in connection with the property."  *Id.* at 886.  In reliance

22  on *Ehrlich,* the City—like numerous other cities throughout California (*see* City's RJN Exhibits

23

24  ────────────

25  [5] The scope of the United States and California Takings Clauses are congruent (except that
    California's Takings Clause "protects a somewhat broader range of values").  *San Remo Hotel
    L.P. v. City and County of San Francisco*, 27 Cal.4th 643, 664 (2002) (*San Remo Hotel*); *see also
    San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 337 n.18, 347 (2005)
26  (U.S. Supreme Court presumed California Supreme Court was correct regarding the co-extensive
    nature of the respective Takings Clauses, and held that a state court takings decision, decided
27  under California law, precluded federal court litigation a takings claim under the U.S.
    Constitution).  This Court may, and should, rely on the California Supreme Court decisions.

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Mountain View

OAK #4829-0104-9687 v2                         - 6 -                    RULE 12(B)(1) AND (B)(6) MOTION TO
                                                                        DISMISS SAC #3:15-CV-03392-VC

1    B to L)—adopted the Ordinance.

2          In addition to *Ehrlich,* which is directly on point because it deals with a public art

3    ordinance similar to the City's Ordinance, many cases uphold public agency residential building

4    design regulations and decisions.  *See, e.g.*, *Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir.

5    1995); *Breneric Assoc. v. City of Del Mar*, 69 Cal.App.4th 166, 173, 179 (1998); *Kucera v. Lizza*,

6    59 Cal.App.4th 1141, 1148-1149 (1998); *Ross v. City of Rolling Hills Estates*, 192 Cal.App.3d

7    370, 376 (1987); *Novi v. City of Pacifica*, 169 Cal.App.3d 678, 682-83 (1985); *Guinnane v. San*

8    *Francisco City Planning Com.*, 209 Cal.App.3d 732, 741–742 (1989); *Desmond v. County of*

9    *Contra Costa*, 21 Cal.App.4th 330, 337–338 (1993); and *Bohannan v. City of San Diego*, 30

10   Cal.App.3d 416 (1973).  There is simply no legal basis to reject either *Ehrlich's* holding, or the

11   settled law recognizing that aesthetic and design regulations are a valid exercise of police power—

12   not a taking of private property without compensation.

13         **2.      The BIA Does Not and Cannot Allege a Facial Taking Under *Nollan/Dolan/***
14   **          *Koontz*.**

                 **a.      *Nollan/Dolan/Koontz* Does Not Apply to Generally Applicable**
15   **                Legislative Actions Like the Ordinance.**

16         In challenging the Ordinance, the BIA ignores the body of law establishing that a

17   *Nollan/Dolan/Koontz* exactions claim is limited to situations involving ad hoc, adjudicative land

18   use decisions, and does not apply to legislative acts like the Ordinance.  *McClung v. City of*

19   *Sumner*, 548 F.3d 1219, 1227 (9th Cir. 2008) (emphasizing that this standard has not been

20   extended "beyond the special context of [such] exactions"); *Ehrlich*, 12 Cal.4th at 868-69, 885-86

21   (rejecting application of *Nollan/Dolan* Doctrine to legislatively imposed conditions); *see also*

22   *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 772 n.11 (9th

23   Cir. 2000), aff'd 535 U.S. 302 (2002), overruled on other grounds in *Gonzalez v. Arizona*, 677

24   F.3d 383, 388 (9th Cir. 2012) (*Nollan/Dolan* framework only applies to regulatory takings claims

25   predicated on approval conditions requiring dedication of property to public use); California Land

26   Use Practice, § 18.68, pp. 18-70-18-72 (Cal. CEB).

27         In *San Remo Hotel*, the California Supreme Court cogently explained why the

28   *Nollan/Dolan/Koontz* theory does not apply to claims that challenge legislation.  The "sine qua

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Mountain View

OAK #4829-0104-9687 v2                          - 7 -                RULE 12(B)(1) AND (B)(6) MOTION TO
                                                                    DISMISS SAC #3:15-CV-03392-VC

non" for application of *Nollan/Dolan* scrutiny is the "discretionary deployment of the police power" in "the imposition of land-use conditions in individual cases." *San Remo Hotel,* 27 Cal.4th at 670.[6] After carefully reviewing the United States Supreme Court cases, the California Supreme Court ruled that *Nollan/Dolan* applies to ad hoc discretionary decisions, not to generally applicable legislation. *Id. at* 668-69.

In sum, under Ninth Circuit and California Supreme Court decisions, the SAC's takings claim fails because a *Nollan/Dolan/Koontz* challenge may not be brought to challenge generally applicable legislation such as the Ordinance.

### b.    Equitable Relief for an Illegal Taking is Not Available Here.

The SAC also fails as a matter of law because the BIA may not seek equitable relief under a *Nollan/Dolan/Koontz* theory.  Indeed, the Ninth Circuit has ruled that equitable relief is not available to enjoin legislation that allegedly violates the Takings Clause.  In *Washington Legal Found. v. Legal Found. of Washington*, 271 F.3d 835, 849 (9th Cir. 2001), the Court explained that the Takings Clause does not prohibit taking private property; it only prohibits taking such property without just compensation; and as such, "prospective injunctive relief is an inappropriate remedy: against the state.[7] See also, *Kamaole Pointe Dev. LP v. County. of Maui,* 573 F.Supp.2d 1354, 1370 (D. Haw. 2008);[8] *but see Levin v. City & Cty. of San Francisco*, 71 F.Supp.3d 1072

---

[6] The California Supreme Court further explained why *Nollan/Dolan* does not apply:

> A city council that charged extortionate fees for all . . . development . . . , would likely face widespread and well-financed opposition at the next election.  Ad hoc individual monetary exactions deserve special judicial scrutiny mainly because, affecting fewer citizens and evading systematic assessment, they are more likely to escape such political controls.

*San Remo Hotel,* 27 Cal.4th at 671; accord *California Bldg. Indus. Assn. v. City of San Jose*, 61 Cal.4th 435, 460-61 (2015), cert. denied sub nom. 136 S. Ct. 928.  In contrast to cases of individualized, ad hoc exactions, when an ordinance applies to "a large number of parcels," there are "assurances against arbitrariness."  *Penn Central, supra,* 438 U.S. at 135 n.32.

[7] On review of *Washington Legal Foundation*, the Supreme Court ruled that the plaintiffs did not prove a taking, and thus did not reach the issue of whether injunctive relief would never be available.  *Brown v. Legal Found. of Washington*, 538 U.S. 216, 231, 240-41 (2003).  The on-point Ninth Circuit decision therefore controls.  *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court").

[8] Rather, when a property owner claims the government has unconstitutionally exacted property, the issue is whether just compensation is due, and injunctive relief is not available. *Daniel v. Cty.*

1   (N.D. Cal. 2014) (allowing facial challenge to ordinance requiring property owners to pay

2   exorbitant amounts of relocation assistance upon exercise of state law right to withdraw housing

3   from market—a decision over which cities have no land use authority, in contrast to cities' police

4   power authority over development, as is the case here).

5        *Nollan*, *Dolan*, and *Koontz* were all as-applied takings claims, each commenced in state

6   court.  The public agencies' actions were only unlawful because they either denied a land use

7   permit or imposed an exaction without just compensation; the Supreme Court did not suggest,

8   much less hold, that equitable relief was appropriate.  *See Nollan*, 483 U.S. at 828, 841-42 (state's

9   action was infirm not because it lacked police power to impose the exaction, but rather because it

10  must "pay for it"); *Dolan*, 512 U.S. at 382-83, 394-96 (remanding matter to state court for rough

11  proportionality and nexus determination); *Koontz,* 133 S.Ct. at 2593-94, 2603 (remanding to state

12  court for application of *Nollan/Dolan* theory to denial of project).

c.   ***Nollan/Dolan/Koontz* Requires a Fact-Specific Inquiry to Determine if Government's Action Constitutes an Illegal Exaction.**

15       The SAC's takings claim also fails because, under *Nollan/Dolan/Koontz*, a fact-specific

16  inquiry is necessary to determine if the nexus and rough proportionality test is met.  *Nollan,* 483

17  U.S. at 825; *Dolan,* 512 U.S. at 374; *Koontz,* 133 S.Ct. at 2603; *Garneau v. City of Seattle*, 147

18  F.3d 802, 807 (9th Cir. 1998).  This "inquiry cannot be made in a vacuum."  *Koontz Coalition v.*

19  *City of Seattle,* 2014 WL 5384434 at *4 (W.D. Wa. 2014) (*Koontz Coalition*).

20       *Koontz Coalition* is on point.  The court concluded that the plaintiff had not pled facts

21  sufficient to state a facial *Nollan/Dolan/Koontz* challenge to a land use ordinance because there

22  "is nothing on which the court can base … [the required] fact-specific inquiry."  *Id.* at *4,*5.

23  Here too, until the City applies the Ordinance to a project and until an applicant unsuccessfully

24  utilizes the appeal procedure, the Court cannot determine whether the City's exercise of its police

25  power fails the nexus and rough proportionality test.  *See also Garneau,* 147 F.3d at 811

26  (*Nollan/Dolan* not applicable to a facial takings claim); *Home Builders Association of Northern*

27

28  *of Santa Barbara*, 288 F.3d 375, 385 (9th Cir. 2002).

1    *California v. City of Napa*, 90 Cal.App.4th 188, 194 (2001) (where an ordinance authorizes the

2    public agency to waive ordinance requirements, the "ordinance cannot and does not, on its face,

3    result in a taking"); *San Mateo County Coastal Landowners Assn. v. County of San Mateo*, 38

4    Cal.App.4th 523, 547 (1995) (citing, *inter alia*, *Pennell v. City of San Jose*, 485 U.S. 1, 8–14

5    (1988) and *Keystone Bituminous Coal Ass. v. De Benedictis* (1987) 480 U.S. 470, 494–496

6    (1987).

7         **3.    The SAC Does Not Allege Facts Stating a *Penn Central* Takings Claim.**

8         Although not clear from the pleadings, to the extent that the SAC attempts to state a

9    takings claim under a *Penn Central* theory as a regulation that has "gone too far" is as flawed as

10   the SAC's purported *Nollan/Dolan/Koontz* claim.  The SAC does not meet the *Williamson*

11   *County* requirements that apply to regulatory takings claims, and it fails to allege facts sufficient

12   to state a *Penn Central* claim.

13                     **a.    No Federal Claim Exists Because the City Has Not Made a Final
                       Decision on Any Development Application, and No Property Owner
14                     Has Sought Just Compensation in State Court.**

15        Under *Williamson County*, a property owner may not state a regulatory takings claim in

16   federal court until it has (1) obtained a "final, definitive position" regarding how the city will

17   apply the regulation to the property at issue; and (2) exhausted state court remedies.  *Williamson*

18   *County Regional Planning Commission v. Hamilton*, 473 US 172, 191-92 (1985).

19        Under the first requirement, the property owner must seek administrative relief.  *Sinclair*

20   *Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 408 n. 4 (9th Cir. 1996).  "A court cannot

21   determine whether a regulation has gone 'too far' unless it knows how far the regulation goes."

22   *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340, 348 (1986).  As to the second

23   requirement, a property owner cannot assert a takings claim until it has been denied just

24   compensation through state procedures.  *Williamson County,* 473 U.S. at 194-95.  There is simply

25   no federal claim until the plaintiff has a final administrative decision and sought just

26   compensation in state court.  *San Remo Hotel v. City and County of San Francisco,* 145 F.3d

27   1095, 1102 (9th Cir. 1998).  Because the SAC meets neither condition, the takings claim must be

28   dismissed.  *MacDonald, Sommer & Frates,* 477 U.S. at 351; *Sinclair Oil*, 96 F.3d at 408.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

OAK #4829-0104-9687 v2          - 10 -          RULE 12(B)(1) AND (B)(6) MOTION TO
DISMISS SAC #3:15-CV-03392-VC

1

**b.**   ***Penn Central* Requires a Factual Inquiry to See if the Regulation Has Gone Too Far.**

2

3      The SAC's takings claim also fails because under *Penn Central* a fact-specific inquiry is

4   necessary to see if the regulation has gone too far.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe*

5   *Reg'l Planning Agency*, 535 US 302, 327, 331 (2002).  The courts evaluate three factors in

6   regulatory takings cases:  (1) the economic impact of the regulation; (2) the degree of interference

7   with reasonable investment-backed expectations; and (3) the character of the governmental

8   invasion.  *Penn Central*, 438 U.S. at 124.  The SAC does not allege facts to make a prima facie

9   showing under *Penn Central*.

10     First, the SAC does not allege facts that could show a substantial impact on property

11  value.  Under the Ordinance, qualifying projects must devote 0.5 - 1.0% of building development

12  costs to acquisition and installation of freely accessible art, and that amount may be decreased

13  under the Ordinance's appeal provisions.  This requirement does not impose a legally significant

14  economic impact.  Indeed, even significant diminution in value does not constitute an economic

15  impact sufficient to be a taking. *See, e.g*., *Concrete Pipe and Products of California v.*

16  *Construction Laborers Pension Trust For Southern California*, 508 U.S. 602, 645 (1993) (46%

17  payment of shareholder equity not a take); *Village of Euclid v. Ambler Realty Co*. 272 U.S. 365,

18  384 (1926) (reduction of $10,000 per acre to $2,500 per acre not a take); *Hadacheck v. Sebastian*,

19  239 U.S. 394, 405 (1915) (reduction of $800,000 to $60,000 not a take).

20     Second, the SAC does not and cannot allege facts that show any interference with distinct,

21  investment-backed expectations.  It is well-settled that cities may exercise their police powers to

22  regulate land use and impose restrictions designed to protect community aesthetics.  *Members of*

23  *City Council of Los Angeles v. Taxpayers for Vincent*, 466 US 789, 805 (1984); *Hoeck v. City of*

24  *Portland*, 57 F.3d 781, 787 (9th Cir. 1995).  Aesthetic regulations are routinely imposed on

25  development, and property owners thus do not have any reasonable investment-backed

26  expectation that they may develop without aesthetics or design standard regulations.

27     Third, the character of the Ordinance does not suggest a taking.  The City will not acquire

28  title to any art installed under the Ordinance.  Instead, title remains with the property owner and

1    runs with the land if the property is transferred.  RJN, Exh. A, § 15.780.100(C).  Further, the

2    Ordinance specifically states that it does not require public access to any area that is not otherwise

3    accessible to the public pursuant to the normal operation and use of the premises, and public

4    access is limited to normal business hours.  RJN, Exh. A, § 15.78.030 (definition of "freely

5    accessible").  There is no governmental "invasion" of private property rights.

6          *Committee for Responsible Regulation of Lake Tahoe v. Tahoe Regional Planning*

7    *Agency,* 311 F.Supp.2d 972, 993 (D. Nev. 2004) (*CFRR*) is on point.  The Court granted the

8    public agency's motion to dismiss a facial challenge to design review regulations governing the

9    size, color, visibility, and other aspects of housing.  The Court considered the *Penn Central*

10   factors and concluded that as a matter of law, the complaint failed to state a regulatory takings

11   claim as a matter of law.  *Id*. at 997-98.  From an analytical standpoint, the SAC's allegations are

12   no different from those found insufficient as a matter of law in CFRR.  As the *Ehrlich* Court

13   recognized, requiring builders to either include art or pay an in-lieu fee is no different than

14   requiring them to include rock and timber features, or otherwise satisfy local design requirements.

15         The SAC should be dismissed because it does not allege facts sufficient to state a takings

16   claim under either *Nollan/Dolan/Koontz* or *Penn Central* as a matter of law.

17   **B.     The BIA Does Not And Cannot Allege Facts Sufficient to State a Facial First
            Amendment Claim.**

18

19            **1.     The First Amendment Claim Fails Because the Ordinance Does Not Implicate
                       "Expressive Conduct."**

20         The SAC's second claim alleges that the Ordinance compels its members' speech in

21   violation of the First Amendment.  It first bears noting that where speech itself is not regulated,

22   the protections of the First Amendment extend "only to conduct that is inherently expressive."

23   *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) ("*FAIR*").

24   The Ordinance does not regulate conduct that is inherently expressive.  See *CFRR*, 311 F.Supp.2d

25   at 1004-05 (for purposes of a facial First Amendment challenge to building design regulations,

26   architecture and design are not expressive as a matter of law; motion to dismiss granted) (citations

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

OAK #4829-0104-9687 v2                          - 12 -          RULE 12(B)(1) AND (B)(6) MOTION TO
                                                               DISMISS SAC #3:15-CV-03392-VC

omitted).[9]  Indeed, the Ordinance does not regulate conduct at all.  Rather, the SAC's First Amendment claim is premised on "non-conduct," namely its members' asserted right **not** to include art in their projects.  The First Amendment claim fails for this reason alone.

### 2.     The Ordinance Does Not Compel Speech.

The SAC offers a conclusory allegation that the Ordinance compels speech, citing *Wooley v. Maynard,* 430 U.S. 705 (1977) and *Frudden v. Pilling,* 742 F.3d 1199 (9th Cir. 2014).[10]  SAC, ¶ 46.  But compelled speech principles under *Wooley* and *Frudden* have no application here.  The Ordinance's requirement to incorporate art into development projects over a certain size, or pay an in-lieu fee for the City to provide public art, is a well-settled form of land use regulation on the design of development, and on its face compels neither speech nor expression.

The "right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."  *Wooley*, 430 U.S. at 714; *see also FAIR*, 547 U.S. at 61 ("freedom of speech prohibits the government from telling people what they must say").  The test "is whether the individual is forced to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable."  *Frudden*, 742 F.3d at 1205 (quoting *Wooley*).[11]

In *Demarest v. City of Leavenworth*, 876 F.Supp.2d 1186, 1197 (E.D. Wash. 2012), on cross-summary judgment motions, the Court rejected a claim that design-related regulations requiring signs to use a Bavarian theme constituted "compelled speech":

> Plaintiffs are not forced to state any particular message ….  Indeed, the Bavarian theme does not compel Plaintiffs to engage in any speech, nor does it regulate the speakers' beliefs, message, ideas or viewpoints.  The Bavarian theme requirement only controls certain physical characteristics of the voluntarily chosen message including

---

[9] Although the court in *CFRR* acknowledged "the possibility that [building design] can constitute free speech," it concluded that the resolution of such an issue is best suited to an as-applied challenge.  *Id.* at 1004 (citing *Nordyke v. King*, 319 F.3d 1185, 1189 (9th Cir. 2003)).

[10] *Wooley* held that the "Live Free or Die" message that the state mandated on license plates violated the First Amendment as coerced speech; *Frudden* invalidated a public school regulation that required students to wear a uniform bearing the mandatory message "Tomorrow's Leaders."  By contrast, the Ordinance here compels no speech.

[11] Note also that in its opinion dismissing a First Amendment challenge to building design regulations, the *CFRR* court applied two-prong test under *Spence v. Washington*, 418 U.S. 405, 411 (1974), and did not explicitly evaluate a compelled speech claim under *Wooley/Frudden*. *CFRR*, 311 F.Supp.3d at 1005.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

OAK #4829-0104-9687 v2                                      - 13 -                          RULE 12(B)(1) AND (B)(6) MOTION TO
DISMISS SAC #3:15-CV-03392-VC

1

2

> size, location, number, lettering, and colors.… the Bavarian theme
> is not content-based and the restrictions are not a form of
> "compelled speech."

3

4

As in *Demarest*, the Ordinance in no manner compels any particular message.  It simply

5

requires BIA's members to either provide some art on their project sites or pay an in-lieu fee.

6

That is no different from requiring the BIA's members to adhere to design and other zoning

7

standards.  *See Ehrlich*, 12 Cal.4th at 885-886 (holding that public art requirements like those

8

imposed by the Ordinance here are "akin to traditional land use regulations imposing minimal

9

building setbacks, parking and lighting conditions, landscaping requirements, and other design

conditions such as color schemes, building materials and architectural amenities").[12] The

10

Ordinance on its face does not dictate what art is required or acceptable, or might be approved or

11

rejected during design review.  Any speculation the BIA might offer about how that process

12

might unfold for any individual project applicant is inappropriate in a facial challenge.  *Koontz*

13

*Coalition,* 2014 WL 5384434 at *5.

14

To the extent the BIA may argue the Ordinance compels its members' speech by requiring

15

them to allow artists' work to occupy their property, that argument would fail under settled law.

16

A regulation does not violate the compelled speech doctrine simply by requiring a property owner

17

to allow another person or organization onto the owner's property to express their speech,

18

because the owner remains free to disassociate himself from those views and is "not ... being

19

compelled to affirm [a] belief in any governmentally prescribed position or view."  *FAIR*, 547

20

U.S. at 64-65 (citing *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980)); *see also*

21

*Environmental Defense Center v. U.S. E.P.A.*, 344 F.3d 832, 849 (9th Cir. 2003) (rejecting

22

*Wooley* compelled speech claim where regulation did not compel specific speech, and the

23

regulated bodies were not prohibited from expressing their own views).

24

The same is true with the Ordinance, which compels no speech at all, much less any

25

26

27

28

[12] A San Francisco case underscores the infirmity of the BIA's effort to manufacture a compelled speech claim.  The Court granted a motion to dismiss a First Amendment challenge to an ordinance compelling persons to wear clothing.  Requiring people to wear clothing does not compel speech under *Wooley/Frudden* because wearing clothes neither conveys a message nor could be understood to convey a message.  *Hightower v. City and County of San Francisco*, 77 F.Supp.3d 867, 881-882 (N.D. Cal. 2014).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

OAK #4829-0104-9687 v2                                    - 14 -                        RULE 12(B)(1) AND (B)(6) MOTION TO
DISMISS SAC #3:15-CV-03392-VC

1    specific speech.  To the extent any of the BIA's members may be concerned that they may

2    somehow be associated with a message that on-site art is important or even good, they have full

3    power to post or otherwise spread their own message disassociating themselves from art generally

4    or as installed on site.  Further, through the in-lieu fee option, the Ordinance allows property

5    owners to choose not to provide any art.  Again, no speech is compelled when the BIA's

6    members, by paying a fee, may opt out of having any art at all on their properties.  The BIA may

7    not predicate a facial claim on speculation how the Ordinance might be applied in the future.

8    *Koontz Coalition,* 2014 WL 5384434 at *5; *cf. Thomas v. Anchorage Equal Rights Com'n*, 220

9    F.3d 1134 (9th Cir. 2000) (facial free speech challenge to legislative prohibition on

10   advertisements prohibiting advertising referencing a marital status preference not justiciable);

11   *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 760-61

12   (11th Cir. 1991) (no justiciable controversy where plaintiff has not demonstrated present injury

13   caused by guidelines governing criticism of public officials).

14        In short, no case has suggested that the imposition of art and design requirements as a part

15   of a city's regulation of land use development applications constitutes compelled speech.  Indeed,

16   the very argument trivializes those decisions, which involved actual compelled speech.  This

17   Court should decline the BIA's invitation to make new law in this area, and thereby unsettle what

18   has become commonplace for California cities.

19   **VI.   CONCLUSION**

20        For the foregoing reasons, this Court should dismiss the Second Amended Complaint,

21   without leave to amend.

22   Dated:  November 29, 2017                      BURKE, WILLIAMS & SORENSEN, LLP

23

24                                                  By:  */s/* Kevin D. Siegel
                                                        Thomas B. Brown
25                                                      Kevin D. Siegel
                                                        Amy E. Hoyt
26                                                      Attorneys for Defendant City of Oakland

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

OAK #4829-0104-9687 v2                    - 15 -        RULE 12(B)(1) AND (B)(6) MOTION TO
                                                       DISMISS SAC #3:15-CV-03392-VC